Mr. Alavado, good morning. Good morning, your honors. May it please the court, my name is Peter Alavado of Notre Dame Law School. I'm here under the supervision of attorney Bob Jones. Mr. Jones appeals the district court's finding that he knowingly and intelligently waived his right to counsel because the record indicates that he did not understand the dangers of self-representation, the nature of the charges against him, nor other facts critical to his self-representation. Therefore, he asked this court to reverse. As a preliminary matter and since the government has disputed it, the standard of review in this case is de novo, with a strong presumption applied against finding of a valid waiver. Review is not deferential, as the government has asserted, because the validity of a constitutional waiver is a legal issue and not a factual one. In United States v. Balsiger, this court held in a decision circulated to the entire circuit that even fact-heavy constitutional waivers are legal issues to be reviewed de novo. And this brought the circuit in line with Supreme Court precedents such as Johnson v. Zerbst and Von Moltke v. Gillies that a Given this standard, review of the lower court's decision clearly shows that Mr. Jones' waiver was not knowing and intelligent. There are three specific deficiencies that we would point to which the Ferretta inquiries were insufficient to unearth. First, Jones' misunderstanding of the nature of the charges against him, as demonstrated by his numerous statements to the court regarding the commercial aspect of the matter. Second, that Jones did not his reliance on a third-party filer. And third, that Jones' background and legal experience were insufficient for self-representation, as demonstrated by his pretrial conduct and lack of performance at trial. In the face of these deficiencies, the court below ought to have conducted further inquiry or appointed counsel over the defendant's objection. Mr. Alivetta, the first point that Mr. Jones talked about these proceedings as being commercial is that a result of his beliefs and practices as a sovereign citizen? In other words, as I understand, to the extent I can, kind of sovereign citizen movement and to the extent that it can be kind of summarized in one sort of umbrella, is that they view a lot of things through the UCC and through commercial law and common law contract versus any recognizing any other authority. If that's the basis for his belief and he stated his belief, what else could the judge have done to try to address that beyond what the judges did? Your Honor, a few points on that. First, there was no discussion at any point in the lower court as to whether or not the defendant held those beliefs and made those arguments as a result of holding sovereign citizen beliefs. Rather, that's a label that's only been applied here on appeal. The lower court judges never made any such finding, and in fact, one of the critical deficiencies in both Ferretta inquiries was that the lower court never inquired as to what types of arguments Jones intended to present or what theories on which he intended to present. Boy, that would be pretty dangerous. I mean, I think if you're asking a district judge to say, preview your defense with me with the prosecutor sitting right there and let me weigh whether or not I think it's going to be good and fly with the jury, and if it is, maybe I'll let you present it, and if it's not, maybe I'll force you to have a lawyer. Your Honor, it's not necessary for the lower court to go into any such great detail, although of course we recognize the danger there, but that is also something that there is precedent for. United States v. Bell, for example, the judge communicated with the defendant as to what types of defenses he intended to present, and the defendant explained to the judge that he was going to present an alibi on his own behalf. And in United States v. Sandals, the judge engaged in a colloquy with the defendant over which arguments were waived by the defendant's plea and which arguments he intended to pursue in light of that plea. Is there any case law that says the judge has to do that? Yes, Your Honor, not in as so many words, but in United States v. Bellinger, this court held that at a minimum, one of the aspects that a defendant must possess in order to represent themselves is an understanding of the nature of the charges and the difficulties encountered at his own counsel, one of which would obviously include having to present arguments on his own defense. And going back farther to the United States Supreme Court's precedent in Von Molfky v. Gillies, the court there stated that one of the indispensable understandings to a valid waiver was possible defenses to the charges and circumstances in mitigation thereof. So there's quite a bit of precedent stating that that is something that a defendant must have an awareness of in order to represent themselves in the forego counsel. Furthermore, Your Honors, while it is true that a strategic waiver, as the government has labeled Jones' here, typically does cut against a finding of, cut towards a finding of a valid waiver, the government uses that term here merely to, merely as synonymous with an intentional waiver. And that's not how this court has treated the strategic waiver analysis in other circumstances. For example, in United States v. Moya Gomez, strategic is consistently used alongside the terms manipulative. And that has primarily been an inquiry to determine whether or not the defendant's arguments are an attempt to tie up the court or to circumvent the court in some way. And that was, and there were no findings by the lower court that that was, this was an attempt to do so. So the strategic aspect of the defendant's waiver in this case does not cut against, or does not cut against the invalidity of the waiver. Turning then to the third party filer. Mr. Jones clearly did not understand the full dangers of self-representation because throughout the proceedings through both pre-trial and trial, Mr. Jones did not have documents on his own behalf. And while there were instances in which the lower court rejected those filings or explained to Mr. Jones that he could not rely on those filings, number one, he continued to do so despite the court's admonishments. And second, he, uh, there was never any inquiry as to, to what degree Mr. Jones was involved with the preparation of these filings, nor to what degree he understood the contents of those filings. And the third- I, I understand why, but, um, I'm just interested in your impression. Do you have concerns about his competency? Only so far, Your Honor, that in the, if there are concerns about Mr. Jones's competency, the first step to determining whether or not those concerns are valid would have been appointing counsel, uh, over his objection, Your Honor. So as a preliminary step to determining whether or not Mr. Jones was or was not competent, the lower court ought to have conducted further inquiry and if necessary, appointed counsel, uh, over him, reappointed standby counsel. The arguments that, that he, uh, that he pressed, uh, or some of the points that he made about being a natural, a natural person, not a U.S. citizen, um, being subject to common law, some of the points that, that Judge Lee is getting at, these are, these are quite akin to different positions that we have seen members of the sovereign citizens movement take in other cases. Banks, um, Janassen in, in particular here. How's this case different? Um. These are, these are very common, um, you know, beliefs that are in positions that are offered by individuals that are part of this movement. Your Honor, we would not suggest that any defendant that makes these types of arguments necessarily does so without an understanding of the nature of the charges against them or an understanding of the scope of representation, but rather in this specific case, the arguments which Mr. Jones made, the statements he made to the court demonstrated he didn't even understand that he was facing criminal charges nor that he stood before a criminal court. It's entirely possible that a defendant could make similar arguments with an understanding. I see how you, I see how you get that out of the second transcript, the one in front of Judge Mim. I, it's much more difficult for me to see that in the first transcript. Am I, have I misread them? No, Your Honor. I do believe there is a difference there in that Judge Mim conducted his inquiry with the benefit of the hindsight of Mr. Jones's filings up to that point. However, as I stated previously, that one of the primary deficiencies in the first Ferretta inquiry was that it did not cover the types of arguments or motions that Mr. Jones intended to present on his own behalf. And if they had, that's something that Judge Long would have been able to more properly address. Okay. You want to save your remaining time? Yes, Your Honor. Thank you. Okay. Very well. Good morning, Mr. Canestra. May I please the court? Good morning, Your Honors. Jeff Canestra on behalf of the United States. The record here makes abundantly clear that the defendant knowingly, intentionally, intelligently, and voluntarily waived his right to counsel, meaning that he understood he had the right to counsel as well as the consequences of waiving that right, including the dangers and disadvantages of doing that. And really at the outset, the Ferretta colloquies here are insurmountable for the defendant. They were thorough, detailed, patient colloquies where the court conveyed everything the defendant needed to know and assured itself through its inquiries and the defendant's response, responses that the defendant understood the things he needed to know. The defendant starts off with his argument that he didn't understand the charges against him. And as Your Honor just alluded to, that's really just unrecognizable to the first colloquy and even the second. But starting with the first, Judge Long went, he first ensured that the defendant had a copy of the indictment. He then went through, he read each of the three charges. And for each charge, he went through all the essential elements of that charge, confirming with the defendant each time that he understood exactly what he was charged with doing, exactly what the jury would have to find beyond a reasonable doubt for him to be found guilty of those charges. The defendant under oath said each time that he understood that. He also said that he understood the charges or the penalties he would face, criminal penalties. In arguing otherwise, the defendant is really contesting the court's implied credibility finding. Is this court, to the point about the standard of review, there really isn't a dispute that the bottom line is de novo, but the factual findings are for clear error. And as this court explained in Balsinger, it too simplifies the analysis to merely observe that the constitutional question is decided de novo, because whether the legal standard is met in a given case will depend on the facts, the factual findings, and in many cases, the district court's credibility findings. Because the district court here, Judge Long, Judge Mim, they were the ones that had the opportunity to engage with the defendant in person, to have that face-to-face discussion with the defendant, to gauge his demeanor, his credibility, the genuineness of his statements, and ultimately his understanding. And so those judges conducted these colloquies, interacted with the defendants, and ultimately made the findings that the defendant was credible when he said he understood these things. So really, it is a factual dispute that the defendant's case, this court absolutely reviews deferentially, as it emphasized in Balsinger itself. So getting to the second colloquy then, the defendant seizes on a remark he made towards the beginning, saying something along the lines of, I don't understand the charges. But first, his very next words were, it's not that I don't understand the letter of the charges. And then he pivoted to saying, how can this court have jurisdiction against me if these are criminal charges, because there's no such thing as statutory jurisdiction in criminal cases, only maritime, and so on. And so really, this was just an iteration of his sovereign citizen sort of argument. And to the extent that there was any lingering ambiguity or lingering misunderstanding on his part, Judge Mim cured that through his responses. Judge Mim said, this is a criminal case. There is no question about that. He said, these charges are based on violations of the federal criminal statutes, that the district court has jurisdiction over those charges. And then he read each of the charges to the defendant again, and each of the penalties. Now, there's also some sort of gamesmanship or wordplay on the defendant's part, saying that he overstands and doesn't understand. That's really another example of where the district court's front row seat is all the more important. Because when these sorts of claims really present a sort of whipsaw effect, where regardless of what the district court did with this, the defendant would be up on appeal arguing that it should have done the opposite. And so in a circumstance like this, where really the defendant is sowing ambiguity in the record and engaging this sort of wordplay, it's the district judge who has the opportunity, based on his face-to-face interactions with the defendant, to gauge whether this is genuine on the defendant's part. Does he really understand? Or does he not? And the court here necessarily found that he did have the understanding. And that's a factual credibility finding that this court reviews deferentially. Mr. Kensler, let me tell you what runs through my mind in these cases, and you tell me I'm way off, or how you all do it. When I see a defendant make a choice like this, to represent himself and go to trial and then do absolutely nothing at the trial, he's sealed his own fate in a major way, and it's going to cost him over 10 years of his life. Most of the time, you do not see people act so against their self-interest like that. It's rare to go to trial and do nothing, that way representing yourself. And that raises for me questions, are we sure he's competent? And I know there's no motion here under 4241, I realize all of that. Where do you see the dividing line between the ability to represent yourself and competency with respect to defendants like this? We talked about this in Jonasson some, but there's a denial of the motion. But I really wonder whether the proper course some of this time when you see complete incoherence on display, is to not have a defendant like this observed for a period of time within the BOP, to figure out what is going on here. So a couple of responses to that. First, I'd note that, as this court has acknowledged, these are arguments that are pretty familiar to the district courts, to the courts of appeals. It's an outlier in terms of the general public, but it's not unusual the criminal defendants in these positions adopt these sorts of arguments. What you mean by that is we have a bunch of sovereign citizen cases. Especially in the criminal justice system, where this court has recognized that when a defendant is essentially up against the wall, the government has a very strong case against him. Sometimes the defendants resort to defiance instead of defense. And although those of us in this room would probably do things differently, that's a defendant's choice to make. And the Supreme Court emphasized that in Feretta, that a defendant has the right to represent himself, even if it's to his own detriment. This court has put it a little more colorfully that defendants have the right to go down in flames if they want. And I note that the way the defendant defended himself at trial, or the lack thereof, was unusual, to be sure, but it was perfectly consistent with the arguments that he made throughout. He really never presented a defense, a factual defense. He never argued, I didn't do these things. Throughout, he was consistently objecting to the court's jurisdiction, saying that the court doesn't have the authority to proceed without my consent, the court doesn't have jurisdiction. And I mean, he really pursued that very consistently, and I mean, I hesitate to say effectively, but it was at all times consistent with his theory. He had a particular view of the law. He's not a person who lacks intelligence. He has no history of mental health issues. So really, this is a circumstance where a defendant is entitled to represent himself, even if that's to his own detriment, and courts are required to respect that choice. Is that lack of any mental illness, what are you thinking about, the PSR? Yeah. Okay. But as well, I mean, that's another circumstance where the district court's front row seat comes into play, because the, you know, is this court observed in Balsinger? The district court has the ability to gauge the defendant's understanding. When courts have interactions with the defendants in person, that's often a circumstance where if they do have concerns about the defendant's competence, about whether he actually understands and is capable of rational thought, that's a circumstance where the district judge would be able to observe that and then act accordingly. But here, none of the parties, including the defendant's standby attorneys, his prior appointed counsel before he waived counsel, the government, the district court, the multiple different judges he appeared before, none of them expressed competency concerns. And, you know, on top of that, that's not something the defendant's raised on appeal, so I don't think it's properly before this court. I'd be happy to answer any of your other... One question, something I've been kind of wondering, too. So, in a situation like this, where someone that espouses sovereignties and beliefs goes to trial, elects to represent himself, and then basically does nothing during the trial. Doesn't really contest any of the witnesses, doesn't take advantage of his right to cross-examine, basically doesn't do anything. Would it have been within the district court's discretion to rescind a valid waiver? No. So that's the secondary argument that the defendant makes on appeal. It would not have been within the court's discretion, because as this court has explained, the court's discretion to rescind a valid waiver exists only to protect, essentially, the integrity of the proceedings against disruption. And so when a defendant declines to participate, but doesn't affirmatively disrupt, the court doesn't have the discretion to rescind a waiver. I think that's exactly Banks, which rejected that same argument. And even if the court had discretion, it never has an obligation to do so. The defendant can never complain on appeal that the district court respected his wishes and allowed him to represent himself. Okay, very well. Thank you, Your Honors. Just briefly, the government opens by stating that the Ferretta inquiries in this instance are insurmountable to the defendant. But that simply isn't true. First of all, the Ferretta inquiries never addressed the defendant's relationship with the third-party filer. And secondarily, the defendant's consistent arguments between the two Ferretta inquiries were what led the government in the first place to second-guess the validity of his waiver. It was at the second Ferretta inquiry. The government stated in that motion that Jones's behavior provided no indication that he intended to participate or represent himself at trial, and that this cast grave doubts on the validity of his waiver. For the government to reverse position now and state that his behavior presented no questions about the validity of his waiver simply stretches the imagination. Thank you, Your Honors. Okay, Mr. Alvado, thanks to you. It's a privilege to have you appear in front of us today. Mr. Palmer, it's always nice to see you. We appreciate your support, and we appreciate the Notre Dame Law School Clinic taking on a case like this. Mr. Canestra, thanks to you. We'll take the appeal under advisement.